USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/30/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
UNITED STATES OF AMERICA,             :
                                       :        17-CR-370 (VEC)
      -against-                        :
                                       :        OPINION AND ORDER
                                       :
STALIN DEJESUS,                        :
                                       :
                      Defendant.   :
------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

On May 23, 2017, officers of the Port Authority Police Department pulled over Stalin DeJesus ("DeJesus") at the New Jersey entrance to the George Washington Bridge. With DeJesus's consent, the officers searched his vehicle and discovered a loaded 9 millimeter semiautomatic handgun hidden in a concealed compartment beneath the front passenger seat. Because DeJesus had been previously convicted of a felony, the United States charged him with one count of being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g) (it is "unlawful for any person—[convicted of a felony]; . . . [to] possess in or affecting commerce, any firearm or ammunition; . . . ."). DeJesus has moved to dismiss the indictment on the grounds that venue is improper in the Southern District of New York and to suppress the firearm on the grounds that the Port Authority officers did not have probable cause to stop his vehicle. Mem. (Dkt. 11). For the reasons that follow, the Court agrees that venue is improper in the Southern District. Accordingly, DeJesus's motion to dismiss is GRANTED. The Court does not reach DeJesus's alternative argument that the stop of his car was unconstitutional.

## DISCUSSION

Federal law requires defendants to be tried in the district in which their crime was "committed." *United States v. Ramirez*, 420 F.3d 134, 138 (2d Cir. 2005) (citing Federal Rule of

Criminal Procedure 18 and Article III, Section 2, Clause 3 of the Constitution). When a statute does not provide specifically for venue, the Supreme Court has instructed the courts to determine the "'*locus delicti*' of the charged offense . . . from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999) (quoting *United States v. Cabrales*, 524 U.S. 1, 6-7 (1998)) (additional citations omitted). In performing this inquiry, the court must "'identify the conduct constituting the offense,' and then 'discern the location of the commission'" of those acts. *Ramirez*, 420 F.3d at 138 (quoting *Rodriguez-Moreno*, 526 U.S. at 279). The Second Circuit has emphasized that the focus is on the physical conduct – or "essential conduct elements" – criminalized by Congress.[1] *Id.* at 144 (noting that the Supreme Court used the phrase "conduct element" three times in the relevant paragraph of *Rodriguez-Moreno*). At this stage in the proceedings, the Government need only "allege with specificity that the charged acts support venue in this district," *United States v. Long*, 697 F. Supp. 651, 655 (S.D.N.Y. 1988), and the Court assumes as true the allegations in the indictment, *United States v. Forrester*, No. 02-CR-302 (WHP), 2002 WL 1610940, at *1 (S.D.N.Y. July 22, 2002).

DeJesus contends that none of the essential conduct of his alleged crime took place in the Southern District of New York. It is undisputed that DeJesus was stopped by the Port Authority officers shortly after he passed through the toll booth to enter the George Washington Bridge. At the time of the stop, his vehicle was in New Jersey, having not yet gone far enough onto the bridge to be over the Hudson River. *Compare* Opp'n (Dkt. 19) at 6 & Ex. 1 at 3, *and* Mem. at 3.

---

[1] In this Circuit, Courts must also apply the "substantial contacts" test to ensure that "the application of a venue provision in a given prosecution comports with constitutional safeguards . . . ." *United States v. Saavedra*, 223 F.3d 85, 92-93 (2d Cir. 2000) (citing *United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985)). DeJesus does not argue that the substantial contacts test applies here. *See* Reply Mem. (Dkt. 22) at 6-7.

According to DeJesus, as to venue, those facts are dispositive because the only essential conduct element of Section 922(g) is the "possession" of a firearm or ammunition, conduct the parties agree did not occur in New York.[2]  Mem. at 6.

Accepting that DeJesus never "possessed" the firearm in New York, the Government argues that the prepositional phrase "in or affecting commerce" is a part of the essential conduct element of possession of a firearm.[3]  Opp'n at 7.  Assuming that to be the case, the Government argues that venue is proper in the Southern District of New York because DeJesus's conduct affected commerce in New York:  he was about to use an instrumentality of interstate commerce to cross into New York and he has acknowledged that he intended to do so.  Opp'n at 8.

The Government analogizes this case to *Rodriguez-Moreno*.  In *Rodriguez-Moreno*, the defendant was charged with violating Section 924(c), which criminalizes using or carrying a firearm "during and in relation to any crime of violence or drug trafficking crime," 18 U.S.C. § 924(c)(1).  *See* 526 U.S. at 279.  Reversing the Third Circuit, the Supreme Court held that venue was proper in any district in which the firearm was used or carried and in the district in which the underlying "crime of violence" was committed.  *Id.* at 280 (explaining that the crime of violence is an essential conduct element despite the fact that it is "embedded in a prepositional phrase and not expressed in verbs").  The Supreme Court contrasted Rodriguez-Moreno's case with *United*

---

[2] In full, Section 922(g) makes it "unlawful for any person—

    (1) who has been convicted in any court of, a crime punishable by imprisonment for a term
        exceeding one year;

to ship or transport in interstate or foreign commerce, *or possess in or affecting commerce, any firearm or ammunition*; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g) (emphasis added).

[3] The Government does not specify whether it believes that the prepositional phrase "in or affecting commerce" is its own essential conduct element or is a part of the essential conduct element of "possessing" the firearm.  The Court assumes the latter.

*States v. Cabrales*, 524 U.S. 1 (1998), in which it considered the proper venue for money laundering charged under 18 U.S.C. § 1957. *Rodriguez-Moreno*, 526 U.S. at 280 n.4. Section 1957 criminalizes "knowingly engag[ing] . . . in a monetary transaction in criminally derived property . . . [,]" 18 U.S.C. § 1957(a). The Court in *Cabrales* held that venue was proper only in the district in which the monetary transactions occurred and was not proper in the district in which the "criminally derived property" was generated because the focus of Section 1957 is the "after the fact" offense of using illicit funds in a monetary transaction, rather than the "anterior criminal conduct" giving rise to those funds. *Cabrales*, 524 U.S. at 7; *see also Rodriguez-Moreno,* 526 U.S. at 280 n.4 (characterizing the "existence of criminally generated proceeds" as a "circumstance element" under Section 1957). The Second Circuit has interpreted *Rodriguez-Moreno* and *Cabrales* to distinguish between "essential element[s]" of the offense (which give rise to venue) and "circumstantial element[s]" of the offense (which do not). *Saavedra*, 223 F.3d at 92.

In *United States v. Davis*, the Second Circuit applied this framework to the Hobbs Act, which, like Section 922(g), prohibits certain conduct that has a connection to interstate commerce. *See* 689 F.3d 179 (2d Cir. 2012); 18 U.S.C. § 1951 (prohibiting "in any way or degree obstruct[ing], delay[ing], or affect[ing] commerce . . . , by robbery . . . ."). *Davis* held that venue is proper in any district in which commerce was affected by the robbery because the Hobbs Act "criminalizes a particular type of 'robbery'—*i.e.*, one that 'obstructs, delays, or affects commerce.'" 689 F.3d at 186 (quoting 18 U.S.C. § 1951). Put differently, "affecting commerce" is an essential element of Hobbs Act robbery "because the terms of the statute itself forbid *affecting commerce* in particular ways." *United States v. Bowens*, 224 F.3d 302, 313 (4th Cir. 2000); *see also Davis*, 689 F.3d at 186-87 (citing *Bowens* approvingly). "When Congress

defines the essential conduct elements of a crime in terms of their particular effects, venue will be proper where those proscribed effects are felt." *Bowens*, 224 F.3d at 313.

Unlike the Hobbs Act, Section 922(g) does not criminalize possession of a firearm in terms of its effect on commerce. Since at least *United States v. Scarborough*, 431 U.S. 563 (1977), Section 922(g) has required only a *de minimis* connection to interstate commerce. *See United States v. Palozie*, 166 F.3d 502, 505 (2d Cir. 1999) ("[I]n order to satisfy the interstate commerce element of [Section] 922(g), the prosecution need only make the *de minimis* showing that the possessed firearm previously traveled in interstate commerce."). The Second Circuit, relying on *Scarborough*, has explained that the statute does not require any temporal nexus between the defendant's act of possessing the firearm and the firearm's effect on commerce:

> The defendant in *Scarborough* argued that this wording meant that the interstate commerce nexus had to be "'contemporaneous' with the possession" of the firearm, and that Title VII therefore proscribed "'only crimes with a present connection to commerce.'" . . . [T]he Court saw "no indication" that in passing Title VII, "Congress intended to require any more than the minimal nexus that the firearm have been, *at some point in time*, in interstate commerce."

*Id.* at 503-04 (quoting *Scarborough*, 431 U.S. at 568, 575) (emphasis added). As applied to this case, DeJesus's alleged possession of a firearm violated Section 922(g) regardless of whether DeJesus's possession of the weapon had any effect on interstate commerce. Like the underlying criminal conduct in *Cabrales*, the effect on commerce under Section 922(g) may be entirely "anterior" to the conduct prohibited by Congress, *Cabrales*, 524 U.S. at 7; put differently, the required effect on commerce is a "circumstance element" of the offense. *Rodriguez-Moreno*, 526 U.S. at 280 n.4.

The relaxed connection to commerce required under Section 922(g) distinguishes Section 922(g) from the Hobbs Act. As the Second Circuit explained in *Davis*, the Hobbs Act does not criminalize mere robbery, it applies only to robberies that have an impact on interstate

commerce. *Davis*, 689 F.3d at 186. This distinction runs through the case law concerning when venue is proper based on an "effect." For example, the Second Circuit has held that venue is proper in a prosecution for false statements under 18 U.S.C. § 1001 in any district in which the false statement affects a government official because Section 1001 criminalizes only the making of false statements that are material and therefore have an effect on the Government official to whom they are made. *See United States v. Coplan*, 703 F.3d 46, 79 (2d Cir. 2012); *see also United States v. Oceanpro Indus., Ltd.*, 674 F.3d 323, 329 (4th Cir. 2012) (same). That is simply not the case under Section 922(g), which criminalizes the defendant's act of possessing a firearm regardless of whether the possession itself has any impact on interstate commerce.[4]

## CONCLUSION

DeJesus's motion to dismiss the indictment for improper venue is GRANTED, and the indictment is DISMISSED. Because the indictment must be dismissed, the Court does not address whether the stop of DeJesus's car was constitutional.

The Clerk of the Court is respectfully directed to close the open motion at docket entry 10.

**SO ORDERED.**

**Dated: August 30, 2017**
    **New York, NY**

_Valerie Caproni_
**VALERIE CAPRONI**
**United States District Judge**

---

[4] *Bowens* is consistent with this distinction. In *Bowens*, the defendant was charged under 18 U.S.C. § 1071 with harboring a fugitive. 224 F.3d at 309. Section 1071 prohibits harboring a fugitive "so as to prevent his discovery and arrest." *Id.* Relying on case law interpreting this statute, the *Bowens* Court explained that the prepositional phrase "so as to prevent his discovery and arrest" defined the *mens rea* element of the offense and did not modify the conduct element of the statute, *i.e.*, harboring a fugitive. *Id.* at 313. Therefore, the Court held that venue was proper only in the district in which the fugitive was harbored. *Id.*